**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

JEANNIE NICOLE BRUESCH,

    Plaintiff,      No. 03:12-cv-01453-HU

vs.

CAROLYN W. COLVIN[1],    **FINDINGS AND RECOMMENDATION**
Commissioner of Social Security,

    Defendant.
_____

James S. Coon
Swanson, Thomas, Coon & Newton
The Thomas Mann Building
820 S.W. 2nd Avenue, Suite 200
Portland, OR 97204

  Attorney for Plaintiff


S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

David Morado
Regional Chief Counsel, Region X, Seattle
Franco L. Becia
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Avenue, Suite #2900 M/S 221A
Seattle, WA  98104

  Attorneys for Defendant

---

[1] Carolyn W. Colvin became acting Commissioner of Social Security on February 24, 2013. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted for Michael J. Astrue as Defendant in this case.

1 - FINDINGS & RECOMMENDATION

HUBEL, United States Magistrate Judge:

The plaintiff Jeannie Nicole Bruesch seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision denying her applications for Disability Insurance ("DI") benefits under Title II of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and Supplemental Security Income ("SSI") benefits under Title XVI of the Act.  Bruesch argues the Administrative Law Judge ("ALJ") erred in finding she has a "moderate" limitation in concentration, persistence, and pace, but then failing to include that limitation in the ALJ's residual functional capacity ("RFC") assessment, and in the hypothetical question posed to the Vocational Expert.  *See* Dkt. ##15 & 21.

### I.   PROCEDURAL BACKGROUND

Bruesch filed an application for DI benefits that was denied on June 1, 1998.  (A.R. 196[2])  The record contains no evidence that Bruesch requested reconsideration of that denial.  She filed a subsequent application sometime in 2002, that was denied initially on January 3, 2003, and on reconsideration on June 24, 2003.  ((A.R. 29, 30, 32-42, *see* A.R. 195)  She protectively filed her

---

[2]The administrative record ("A.R.") was filed electronically using the court's CM/ECF system. Dkt. #11 and attachments. Pages of the A.R. contain at least three separate page numbers: two located at the top of the page, consisting of the CM/ECF number (e.g., Dkt. #11-1, Page 18 of 132) and a Page ID#; and a page number located at the lower right corner of the page, representing the numbering inserted by the Agency. Some pages also contain a page number inserted by the office supplying the records. Citations herein to "A.R." refer to the agency numbering in the lower right corner of each page.

2 - FINDINGS & RECOMMENDATION

current applications on January 21, 2004.**³** (A.R. 15, 576) Bruesch claims she has been disabled since June 15, 2002, and she is unable to work due to abdominal pain, extreme weakness, dizzy spells, fibromyalgia, chronic back and hip pain, migraine headaches, sleep apnea, severe fatigue, post-traumatic stress disorder, bipolar disorder, anxiety and depression, and a personality disorder. (*See* A.R. 15, 17-20, 69, 576, 909-10)

Bruesch's current applications were denied initially on September 17, 2004. (A.R. 31, 43-48). Although no reconsideration denial appears in the record, Bruesch apparently proceeded through the reconsideration process because she was granted an ALJ hearing, which was held on August 9, 2007. (*See* A.R. 576) On August 17, 2007, an ALJ denied Bruesch's claim. (A.R. 573-86) The Appeals Council denied review on January 4, 2008 (A.R. 570-72), but then, two years later (on February 5, 2010), remanded the case to an ALJ for further proceedings. (A.R. 587-90) In its remand order, the Appeals Council indicated it had been "unable to take action on [Bruesch's] request for review at the time it was filed because the record upon which the [ALJ] based the decision could not be located." (A.R. 589) This statement is puzzling in light of the Appeals Council's prior denial of review on January 24, 2008, when the record apparently was available. (A.R. 570-72)

Another ALJ hearing was held on December 6, 2010. (A.R. 906-52) Bruesch was represented by an attorney at the hearing.

---

**³**The Commissioner indicates, in her brief, that Bruesch "was twenty-six years old when she filed her present applications for benefits[.]" Dkt. #17, p. 2. Actually, Bruesch was born in 1975, making her twenty-nine years old on January 21, 2004. (*See* A.R. 912) However, the discrepancy is irrelevant to the current review.

3 - FINDINGS & RECOMMENDATION

Witnesses included Bruesch and a Vocational Expert ("VE"). (*Id.*) On January 18, 2011, the ALJ issued a decision denying Bruesch's applications for benefits. (A.R. 12-28) On July 6, 2012, the Appeals Council denied review of the January 18, 2011, ALJ's decision (A.R. 5-7), making it the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Bruesch filed a timely Complaint in this court seeking judicial review of the Commissioner's final decision denying her applications for SSI and DI benefits. Dkt. #1. The matter is fully briefed, and the undersigned submits the following findings and recommended disposition of the case pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.   FACTUAL BACKGROUND

Only a brief summary of the factual background is necessary to establish a framework for evaluation of Bruesch's single assertion of error in this case. The evidence indicates Bruesch is 5'5" tall, and she is morbidly obese, weighing as much as 278 pounds during the period under review. Dkt #15, p. 1; A.R. 17. She is a high school graduate, and "completed additional vocational training in computing." Dkt. #17, p. 2 (citing A.R. 75). Her past work includes fast food jobs; cashier; and office positions including receptionist, office manager, and shift manager. *Id.* (citing A.R. 114, 122, 645-48, 657, 946); Dkt. #15, p. 2. At the time of the second ALJ hearing on December 6, 2010, Bruesch was working part-time at McDonald's. Dkt. #17, pp. 2-3 (citing A.R. 914-15).

The ALJ found Bruesch has severe impairments consisting of: "obesity at a height of 65.5 inches and uppermost weight of 278

4 - FINDINGS & RECOMMENDATION

pounds with an uppermost BMI of 45.7; epidural lipomatosis[4] with central canal stenosis from L4-S1 causing low back pain and bilateral lower extremity radiculopathy, as shown on MRI scan; as well as a bipolar disorder and personality disorder, as diagnosed by a consulting psychiatrist and psychologist[.]" (A.R. 17-18; citations omitted) However, the ALJ found these severe impairments, singly or in combination, do not rise to the Listing level of severity. (A.R. 21)

The ALJ found Bruesch does not have "severe" fibromyalgia under the regulations. The ALJ discussed his rationale for this finding at length, reviewing the diagnostic criteria for the disorder, objective findings by a 2002 treating physician, and inconsistencies in the evidence that caused the ALJ to discount the credibility of Bruesch's claim that she suffers from severe fibromyalgia. (A.R. 18-19) The ALJ similarly found Bruesch's migraine headaches and post-traumatic stress disorder are not severe impairments. (A.R. 19-21)

The ALJ assessed Bruesch's RFC as follows:

> After careful consideration of the entire record, the undersigned finds the claimant has obesity and epidural lipomatosis with L4-S1 central canal stenosis that limit her to the performance of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for standing, walking and sitting each for six hours with the option to change sitting and standing

---

[4]"Epidural lipomatosis is a rare disorder in which an abnormal amount of fat is deposited on or outside the lining of the spine. It may press on the spinal cord and nerves." "Symptoms vary, but back pain and weakness are the most common ones. Other possible signs may be a loss of sensation or reflexes that are too slow or too fast." Steroid use and obesity are two possible contributors to the disorder. http://www.cedars-sinai.edu/Patients/Health-Conditions/Epidural-Lipomatosis.aspx (visited 08/30/13).

5 - FINDINGS & RECOMMENDATION

>positions every 15 to 30 minutes; no climbing of ladder/rope/scaffolds; and occasional stooping, kneeling, . . . crouching and crawling. She has bipolar and personality disorders that limit her to having occasional interaction with co-workers and the public with no teamwork; and understanding, remembering and carrying out unskilled instructions.[5]

(A.R. 22) In evaluating Bruesch's mental impairments, the ALJ found Bruesch "has a bipolar disorder with depressive and manic symptoms" under Listing 12.04, and a personality disorder consisting of "persistent disturbances of mood" under Listing 12.08. (A.R. 21) Considering the "paragraph B" criteria, the ALJ found Bruesch has mild restriction in her activities of daily living and social functioning; and moderate difficulties with regard to concentration, persistence, or pace. (A.R. 21-22)

In reaching these conclusions regarding Bruesch's mental functional capacity, the ALJ "largely accepted" assessments by Clinical Psychologist Gregory Cole, Ph.D., and an unidentified state-agency consultant. (A.R. 22) Dr. Cole completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" regarding Bruesch on April 30, 2007. (A.R. 533-35) Dr. Cole opined Bruesch would have "mild" difficulty in her ability to understand, remember, and carry out complex instructions, and make judgments on complex work-related decisions. (A.R. 533) He opined Bruesch would have "moderate" difficulty in her ability to interact appro-

---

[5]The ALJ's statement of Bruesch's RFC is far from a model of clarity. It appears the ALJ was indicating Bruesch can perform light work as long as she has the ability to change positions between sitting and standing every 15 to 30 minutes; she is not required to climb ladders, ropes, or scaffolds; and she is required to stoop, kneel, crouch, and crawl no more than occasionally.

6 - FINDINGS & RECOMMENDATION

priately with the public, supervisors, and coworkers, and respond appropriately to unusual work situations and to changes in a routine work setting. (A.R. 534) He indicated that none of Bruesch's other functional abilities would be affected by her impairments. (*Id.*)

The unidentified state-agency consultant performed a records review on September 16, 2004, and completed a Mental Residual Functional Capacity Assessment form (A.R. 238-41), and a Psychiatric Review Technique form (A.R. 242-54). The consultant's signature is mostly illegible, except for the clear indication that the consultant was an "M.D." (*See* A.R. 242) The consultant opined Bruesch would be "moderately" limited in her ability to understand, remember, and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. (A.R. 238-39) The consultant indicated Bruesch would vary from no limitation to a moderate limitation in her ability to sustain an ordinary routine without special supervision. (A.R. 238)

The consultant elaborated on these opinions, as follows:

> [Bruesch's] [symptoms] of depression would limit her from carrying out detailed tasks/instructions. She will do best [with] simple repetitive tasks.
>
> She will do best [with] occupations only requiring superficial contact [with] general

7 - FINDINGS & RECOMMENDATION

>    public, where she is not likely to be chal-
>    lenged.
>
>    She will benefit from [a] patient and under-
>    standing supervisor who is firm and can set
>    realistic goals.
>
>    She will tend to underestimate her own abili-
>    ties and fixate on her perceived [symptoms] at
>    times and will benefit from some redirection.
>
>    (Despite [Bruesch's] obvious [illegible] of
>    getting on disability benefits [numerous
>    applications] she appears to be managing her
>    children and their well-being well con-
>    sidering.)
>
>    Based on sum of evidence [Bruesch] should be
>    capable of performing her [past relevant
>    work].

(A.R. 240)

The consultant also opined Bruesch would have mild-to-moderate difficulties maintaining concentration, persistence, or pace. (A.R. 252) This is consistent with the opinions of two state-agency consultants who reviewed the record in 2003. (*See* A.R. 208, 222)

The ALJ asked the VE to consider an individual with the limitations set forth in the ALJ's RFC finding. The VE testified that someone with those limitations would be unable to perform any of Bruesch's past relevant work "because all of these jobs involved frequent interaction with the public and co-workers," and "also entailed teamwork." (A.R. 26, 946) However, the VE indicated a person with those limitations would be able to work as a small products assembler, electronics worker, or price marker. (A.R. 947-48) If the individual "would be unable to maintain attention and concentration for extended periods of time," then competitive employment likely would not be possible. The VE stated, "I'm not

8 - FINDINGS & RECOMMENDATION

exactly sure what the definition of 'extended periods of time' is. My experience is that a person who . . . would be unproductive for 10 percent or more of the time for whatever reason would be precluded from employment." (A.R. 948-49)

The ALJ relied on the VE's testimony in determining that although Bruesch would be unable to return to any of her past relevant work, she would be able to perform the jobs of small products assembler, electronics worker, and price marker. The ALJ therefore concluded Bruesch had not been under a disability at any time from June 15, 2002, through January 18, 2011. (A.R. 26-27)

### III. DISABILITY DETERMINATION AND THE BURDEN OF PROOF

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

"Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Commissioner*, 648 F.3d 721, 724 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520[6]). The Keyser court described the five steps in the process as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the

---

[6]Although *Keyser* dealt with an applicant for Disability Insurance benefits under Title II of the Social Security Act, the identical five-step sequential evaluation process is applied to applications for SSI under Title XVI of the Act. *Compare* 20 C.F.R. § 404.1520 *with* 20 C.F.R. § 416.920.

9 - FINDINGS & RECOMMENDATION

>impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser*, 648 F.3d at 724-25 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)); *see Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520 (b)-(f) and 416.920 (b)-(f)). The claimant bears the burden of proof for the first four steps in the process. If the claimant fails to meet the burden at any of those four steps, then the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *see Bowen v. Yuckert*, 482 U.S. 137, 140-41, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987); 20 C.F.R. §§ 404.1520(g) and 416.920(g) (setting forth general standards for evaluating disability), 404.1566 and 416.966 (describing "work which exists in the national economy"), and 416.960(c) (discussing how a claimant's vocational background figures into the disability determination).

   The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails meet this burden, then the claimant is disabled, but if the Commissioner proves the claimant is able to perform other work which exists in the national economy, then the claimant is not

10 - FINDINGS & RECOMMENDATION

disabled. *Bustamante*, 262 F.3d at 954 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1098-99).

The ALJ also determines the credibility of the claimant's testimony regarding his or her symptoms:

> In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step prescribed by *Smolen*, . . . the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id.* at 1281-82. If this . . . test is satisfied, and if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms [only] with "specific findings stating clear and convincing reasons for doing so." *Id.* at 1284.

*Batson v. Commissioner*, 359 F.3d 1190, 1196 (9th Cir. 2004).

### *IV.    STANDARD OF REVIEW*

The court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *accord Black V. Comm'r of Soc. Sec. Admin.*, slip op., 2011 WL 1930418, at *1 (9th Cir. May 20, 2011). Substantial evidence is '"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

11 - FINDINGS & RECOMMENDATION

The court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1998)). Instead, the court must consider the entire record, weighing both the evidence that supports the Commissioner's conclusions, and the evidence that detracts from those conclusions. *Id.* However, if the evidence as a whole can support more than one rational interpretation, the ALJ's decision must be upheld; the court may not substitute its judgment for the ALJ's. *Bray*, 554 F.3d at 1222 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

### ***V.   DISCUSSION***

Bruesch asserts the ALJ erred in finding she "suffers 'moderate' limitations in concentration, persistence, and pace, yet failing to include that limitation in his dispositive hypothetical question [to the VE]." Dkt. #15, p. 2. As discussed above, the ALJ found that "[w]ith regard to concentration, persistence or pace, [Bruesch] has moderate difficulties." (A.R. 22) The ALJ's RFC limits Bruesch "to having occasional interaction with co-workers and the public with no teamwork; and understanding, remembering and carrying out unskilled instructions." (*Id.*) Bruesch argues the limitation to "unskilled instructions" fails to account for a moderate impairment in concentration, persistence, or pace. Dkt. #15, pp. 6-7.

Bruesch relies on *Lubin v. Commissioner*, 507 Fed. Appx. 709 (9th Cir. Feb. 8, 2013) (mem.) (unpublished disposition), where the court held as follows:

12 - FINDINGS & RECOMMENDATION

> Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert. The ALJ must include all restrictions in the residual functional capacity determination and the hypothetical question posed to the vocational expert, including moderate limitations in concentration, persistence, or pace. 20 C.F.R. §§ 404.1545, 416.945; *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).
>
> Limiting Lubin "to one to three step tasks due to pain and prescription drug/marijuana use" did not capture the limitation in concentration, persistence, or pace found by the ALJ. The work described by the vocational expert may still require the speed and concentration Lubin lacks. *See Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. Appx. 211, 212 (9th Cir. 2009) (unpublished). The hypothetical question should have included Lubin's moderate limitations in concentration, persistence, or pace.
>
> Because the ALJ's hypothetical question to the vocational expert did not reflect all of Lubin's limitations, "the expert's testimony has no evidentiary value to support a finding that [Lubin] can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

*Id.*, 507 Fed. Appx. at 712; *see Cruz v. Colvin*, 2013 WL 4082714, at *9 (C.D. Cal. Aug. 13, 2013) (RFC limiting claimant to "'simple repetitive tasks' . . . did not accommodate [physician's] findings of moderate limitations on [claimant's] ability to concentrate for extended periods, complete a normal workday or workweek without interruption, sustain an ordinary routine, make simple decisions, and perform at a consistent pace"; citing *Lubin, supra*); *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) ("Hypothetical questions posed to the vocational expert must set out *all* the limi-

13 - FINDINGS & RECOMMENDATION

tations and restrictions of the particular claimant. . . .") (emphasis in original; internal quotation marks, citations omitted).

The Commissioner argues *Lubin* "is neither binding nor persuasive authority" on the issue at hand. Dkt. #17, p. 12. The Commissioner argues further that the "pincited page of *Magallanes* [cited by the *Lubin* court] simply states ALJs are 'not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel.'" *Id.* (quoting *Magallanes*, 881 F.3d at 756). The Commissioner argues the *Lubin* court failed to address "the seminal published case on this issue," which the Commissioner argues is *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008).

The page of *Magallanes* cited by the *Lubin* court does not "simply state[]" the finding quoted by the Commissioner; the *Magallanes* court further noted the well-settled law that a hypothetical question posed to a VE must include *all* of a claimant's limitations and restrictions. *Magallanes*, 881 F.3d at 756. However, as an unpublished decision, *Lubin* is not binding precedent. *See* Ninth Cir. Rule 36-3(a).

The Commissioner also argues Bruesch's "reliance on the paragraph B findings of the psychiatric review technique is misplaced because these findings . . . are relevant only at step three, where the ALJ considers whether a claimant's impairment or combination of impairments meets or equals an impairment that presumptively demonstrates disability." Dkt. #17, p. 9 (citing 20 C.F.R. § 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listings)). The Commissioner maintains the ALJ's analysis at step

14 - FINDINGS & RECOMMENDATION

three "is separate and distinct from the [RFC] assessment." *Id.* (citing SSR 96-8p, 1996 WL 374184, at *4).

The parties' arguments echo what is becoming a frequent issue in this and other courts, regarding the relationship between an ALJ's findings at steps two and three, where the ALJ determines whether the claimant has a severe impairment that meets or equals a listed impairment; the RFC, which the ALJ determines at step four; and whether the hypothetical question posed to a VE must account for limitations identified in the step two/three inquiry. The Third, Seventh, Eighth, and Eleventh Circuits have rejected the Commissioner's position that including limitations found at step two/three in a hypothetical question would inappropriately conflate the independent inquiries at steps two/three and step four. *See Winschel v. Comm'r*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing cases from the other Circuits). The *Winschel* court found that although the two inquiries are "undeniably distinct," nothing in the regulations "precludes the ALJ from considering" the results of the step two/three inquiry in his determination of the claimant's RFC. *Id.*

The *Winschel* court went on to explain when an ALJ should be *required* to include limitations found at step two in the hypothetical question to the VE. The court first examined how other circuits have treated the issues, as follows:

> Other circuits have also rejected the argument that an ALJ generally accounts for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work. *See Stewart v. Astrue*, 561 F.3d 679, 685-85 (7th Cir. 2009) (*per curiam*); *Ramirez [v. Barnhart]*, 372 F.3d [546,] 554 [(3d Cir. 2004)]; *Newton [v.*

15 - FINDINGS & RECOMMENDATION

> *Chater]*, 92 F.3d [688,] 695 [(8th Cir. 1996)]. But when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations. *See Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009); *Stubbe-Danielson v. Astrue*, 539 F.3d 1169, 1173-76 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Additionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (concluding that the hypothetical question adequately incorporated the claimant's limitations in concentration, persistence, and pace when the ALJ instructed the vocational expert to credit fully medical testimony related to those limitations).

*Winschel*, 631 F.3d at 1180-81. The court noted that despite finding, at step two, that "Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace[,]" the ALJ neither found the "medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical." *Id.*, 631 F.3d at 1181. Thus, the court held "the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert." *Id.*

"A hypothetical question posed to a vocational expert must 'include all of the claimant's functional limitations, both physical and mental.'" *Brink v. Comm'r*, 343 Fed. Appx. 211, 212 (9th

16 - FINDINGS & RECOMMENDATION

Cir. 2009) (quoting *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995)). "Where the ALJ credits the opinion of a physician, the ALJ must translate the plaintiff's condition as described in the physician's opinion into functional limitations in the RFC." *Amanti v. Comm'r*, 2012 WL 5879530, at *5 (D. Or. Nov. 19, 2012) (Marsh, J); *see Brink*, 343 Fed. Appx. at 212 (ALJ erred in failing to include, in hypothetical question, medical opinion accepted by ALJ regarding claimant's limitations). Here, the ALJ "largely accepted" the assessment of the unidentified state-agency consultant, who found Bruesch would have moderate difficulties in, among other things, completing a normal workday and workweek without interruptions from psychologically-based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. The issue, then, is whether the ALJ's RFC assessment, which limits Bruesch to "understanding, remembering and carrying out unskilled instructions" sufficiently translates the medical opinion into functional limitations in the RFC. *See Amanti*, *supra*. "An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174.

In *Bickford v. Astrue*, 2010 WL 4220531, at *11-12 (D. Or. Oct. 19, 2010), Judge King of this court noted the cases differ on whether an individual "who suffers from moderate difficulties in concentration can perform simple, repetitive tasks." *Id.*, at *11 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001)). Judge King held, "In short, so long as the ALJ's decision is

17 - FINDINGS & RECOMMENDATION

supported by medical evidence, a limitation to simple, repetitive work can account for moderate difficulties in concentration, persistence or pace." *Id.; see Brink*, 2013 WL 1785803, at *7 ("[T]he ALJ translated plaintiff's moderate limitation in concentration, persistence, or pace into the only concrete restriction - i.e. for simple, repetitive tasks of one to three steps - outlined in the medical evidence.").

The court finds that limiting Bruesch to "unskilled instructions" adequately incorporates moderate limitations in concentration, persistence, or pace. Unskilled work, by definition, consists of "routine, repetitive tasks, [and] simple instructions." *Rodriguez v. Comm'r*, slip op., 2013 WL 4521138, at *7 (D. Or. Aug. 26, 2013) (Marsh, J). The medical evidence upon which the ALJ relied supports the conclusion that Bruesch is capable of performing unskilled work. Her part-time job at McDonald's is further evidence in support of the ALJ's decision. Therefore, the Commissioner's decision should be affirmed.

### *VI.   CONCLUSION*

For the reasons discussed above, the undersigned recommends the Commissioner's decision be affirmed.

### *VII.   SCHEDULING ORDER*

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due by **December 10, 2013.** If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed,

18 - FINDINGS & RECOMMENDATION

then any response is due by **December 27, 2013**.  By the earlier of the response due date or the date a response is filed, the Findings and Recommendations will go under advisement.

IT IS SO ORDERED.

Dated this 22nd day of November, 2013.

/s/ Dennis J. Hubel

Dennis James Hubel
Unites States Magistrate Judge

19 - FINDINGS & RECOMMENDATION